IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEANDRE M. SMITH,

                Petitioner,                OPINION AND ORDER

   v.

                                                                      22-cv-21-wmc

LANCE WIERSMA,[1]

                Respondent.

Petitioner Deandre M. Smith, who is represented by counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking to challenge his 2015 conviction for felon in possession of a firearm and misdemeanor battery. Smith contends that his conviction should be vacated and he should be granted a new trial because his trial counsel, Attorney Murali Jasti, violated his Sixth Amendment right to effective assistance of counsel by mishandling the cross-examination of the victim and the admission into evidence of a photograph of a gun. As explained below, Smith's petition to this federal court will be denied because he has failed to establish that the Wisconsin courts unreasonably applied clearly established federal law or based their decision on an unreasonable interpretation of the facts.

BACKGROUND[2]

**A. Criminal Charges**

The 11 counts against Smith originated from seven, separate incidents occurring in

---

[1] Smith was released to extended supervision after filing his petition, so he is now a supervisee in the custody of Respondent Lance Wiersma, the Administrator of the Division of Community Corrections.

[2] The following facts are taken from Smith's petition and the state court records provided by Smith and the state.

Dane County, Wisconsin, between September and December 2014, although only two are relevant to this petition. During both of the relevant incidents, Smith was living part-time with his then-girlfriend, "BMJ," and their two children, aged two and five at the time.[3]

The first relevant incident occurred in the early hours of October 28, 2014, when a verbal argument at BMJ's apartment led to a physical altercation between Smith and her, resulting in BMJ allegedly being shot in the arm, although Smith was not convicted for that shooting, but instead for being a felon in possession of a firearm in relation to this incident.

The second incident resulting in a conviction for misdemeanor battery occurred on December 27, 2014, after BMJ's sister called the police about what she thought was Smith beating BMJ while she was speaking to her on the phone. Later that day, BMJ called the police herself to report that Smith had taken some of her property, but she wouldn't talk about the events further because she did not want Smith to go to jail. Again that night, however, BMJ told the responding officers that she was fine. Still, on December 28, 2014, BMJ told Officer Davenport, who had responded the night before, that Smith had gotten on top of her on the ground, slapped her three or four times, choked her, and slammed her into the ground from behind. Davenport noticed a small bruise above her eye and scratches on her back, but when he asked for her permission to photograph them for evidence, she declined.

During a subsequent interview on December 30, 2014, BMJ told then Police Officer (now Detective) Peterson about some seven disputes that she had with Smith, several of which occurred when their children were in the home. BMJ said that the incident that made her most upset was when Smith shot her in the arm on October 28, 2014. She described how that

---

[3] The court will follow the lead of the parties and refer to BMJ by her initials to protect her privacy.

incident began with a verbal argument, which quickly devolved into a physical altercation with Smith taunting her with his gun and BMJ holding a knife. When BMJ attempted to spray Smith in the eyes with perfume, she explained that he shot her, after which they both got in a car with their son to dispose of the gun at Smith's mother's house. While they also initially planned on going to the hospital, Smith argued against it, resulting in another argument where he punched BMJ in the jaw. During the December 30 interview, Officer Peterson saw the bruise on BMJ's face and scratches on her neck, and he obtained her consent to take photographs of her injuries and the apartment, including of the bullet that was allegedly lodged in the wall following the October 28 shooting incident. Throughout the police investigation, BMJ provided information to officers, including a photograph of a "black handgun resting on bright red fabric along with what appeared to be a portion of a belt and an ammunition clip with one visible round." (Dkt. #9-11, at 2.) The State charged Smith with 11 counts, including battery and felon in possession of a firearm.

### B. Pretrial Proceedings

In advance of trial, Attorney Jasti filed a motion in limine seeking to prohibit the State from introducing the photograph of the gun purportedly involved in the October 28 incident, arguing that the State lacked sufficient foundation to support admission of the photo because the source of the photo was unclear. The following interchange took place regarding this motion at the pretrial hearing:

> ATTORNEY JASTI: There was a sequence of events in which the alleged victim here e-mailed Officer Peterson a picture of a gun that she purported was the gun that was used in the incident. There was no identifying markers on that picture. It was something that she had pulled from an Instagram account that was not associated with my client in any way. The user name was

> gibberish if nothing else. It was some kind of fictional name, and so there was no opportunity for us to inquire as to what the source of that picture fundamentally was. So those were our primary concerns with introducing that photograph of some otherwise unknown picture of a gun and trying to tie that to my client.
>
> * * *
>
> THE COURT: All right. And I'm assuming that, police officers, that if they're going to testify that what appears to be a hole in the front and back of the purported victim's arm was made by a bullet, that they would not be able to accurately or with any measure or degree of accuracy state that that's the type of bullet that came from that type of gun; is that right?
>
> ATTORNEY THROCKMORTON: I think they can say it's consistent because she described the gun and she described the picture that she sent was -- She said that that was consistent with the gun that the defendant used, and I believe that there could be testimony that the size of the hole in the wall and the size of the scar could be consistent with the type of bullet from the gun that she was describing.
>
> THE COURT: All right. This photograph, is there someone that's going to authenticate that photograph, or is it just at random?
>
> ATTORNEY THROCKMORTON: Yes. We do intend to authenticate it through [BMJ], and it's demonstrative, just saying that the gun was consistent with that. We're not claiming that it was the gun, but that she -- she gave the photograph to say that the gun was consistent with this gun.
>
> THE COURT: Is she the one that sent the photograph?
>
> ATTORNEY THROCKMORTON: She did. She e-mailed it to our detective.
>
> THE COURT: And, if that can be established foundationally, then the photograph comes in. If it can't be, the photograph is out.

(Tr. Trans., dkt. #9-1, at 11.)

C. **Trial**

During Smith's two-day trial in May 2015, the State called several witnesses, beginning with BMJ, whom the state moved to have declared an adverse or hostile witness. Jasti did not object, and the court granted the request. On direct examination by the State, BMJ recanted all of her previous allegations made to the police, stating that she had fabricated those allegations because she was angry with Smith for cheating on her. The State asked a series of leading questions to elicit the contents of BMJ's prior statements to law enforcement, and Jasti again did not object. BMJ admitted that she provided the gun photo to law enforcement, and the State offered it into evidence without objection from Jasti. On cross-examination, Jasti focused on BMJ's contentious relationship with Smith in an effort to reinforce BMJ's testimony that she had made false, inculpatory statements to the police because of Smith's alleged infidelity.

Next, the State called the responding police officers, Davenport and Peterson, to detail their interactions with BMJ. During her testimony, Peterson identified the photograph of a gun that BMJ had said she found on Instagram and emailed to Peterson, along with a statement that it "might be the gun that was used by the defendant in the October 28 incident, [b]ut at a minimum, it resembled the gun." (Dkt. #9-2, at 92.) The State also called several other witnesses, including medical professionals who saw injuries to BMJ's eye, two people who were present in BMJ's apartment building and interacted with her during an incident in mid-December 2014, and one person who oversaw the property damage complaints to BMJ's building. The defense called no witnesses.

During its deliberations, the jury asked to review several exhibits: photos of BMJ's injuries, including scars on her arm; photos of the alleged bullet hole in the wall; and the gun photo. Defense counsel did not object to any of these exhibits going to the jury.

Ultimately, the jury found Smith guilty on three out of the eleven charged counts: felon in possession of a firearm, Wis. Stat. § 941.29(2)(a); strangulation and suffocation, Wis. Stat. § 940.235(1); and misdemeanor battery, Wis. Stat. § 940.19(1). On July 7, 2015, Dane County Circuit Judge Hanrahan sentenced Smith to six years for being a felon in possession, five years for strangulation and suffocation, and two years for misdemeanor battery, all to be served consecutively for a total of 13 years.[4]

### D. Postconviction and Appellate Proceedings

Smith filed a postconviction motion with the Dane County Circuit Court in early December 2016, after which the court vacated the strangulation and suffocation conviction on grounds not relevant to this petition, leaving Smith to serve eight years. Then, in May 2018, Smith filed a supplemental postconviction motion, which challenged the remaining two convictions on the ground that his trial counsel was ineffective. On August 8, 2018, the circuit court held a hearing on that motion pursuant to *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), at which both BMJ and Jasti testified. Jasti testified that he did not have any strategic reason for failing to object to the following at trial: the State's request to treat BMJ as an adverse witness; the State's leading questions as posed to BMJ; witness testimony regarding the gun photograph; and the gun photograph being submitted to the jury without a limiting instruction on its use. (*See* dkt. #15-9, at 19-23.) However, Jasti further testified that

---

[4] Each conviction carried a repeater enhancer, Wis. Stat. § 939.62(1), and a domestic abuse enhancer, Wis. Stat. § 968.075(1)(a).

6

he did not think that the State's questioning of BMJ was damaging to Smith because it came across as "controlling" and "was not particularly effective." (*Id*. at 23.) Jasti also explained that he did not try to elicit even more explanation and exculpatory testimony from BMJ because she had not been cooperative with him before trial, and he did not like to ask questions to which the answer was unknown. Finally, Jasti felt that the State had not proved their case with her testimony on direct examination. Concluding that Jasti's representation was reasonable under the circumstances, the circuit court dismissed Smith's supplemental postconviction motion in its entirety.

Smith filed a timely appeal in May 2019, arguing in relevant part that he was denied effective assistance of counsel because his trial attorney (1) mishandled BMJ's testimony and (2) failed to object to the admission of the photograph of a gun into evidence.[5] However, the Wisconsin Court of Appeals rejected Smith's arguments and affirmed the circuit court's rulings, finding that Smith failed to show that Jasti's performance fell below an objective standard of reasonableness or that he was prejudiced by trial counsel's handling of this evidence. Smith filed a motion for reconsideration, which the court of appeals denied with the exception of an errata sheet issued to reflect changes to certain paragraphs in the opinion.

The Wisconsin Supreme Court denied Smith's petition for review in May 2020, after which the United States Supreme Court denied Smith's writ of certiorari. Smith then filed a timely petition for writ of habeas corpus in this court in January 2022.

---

[5] Smith also argued on appeal that (3) the evidence was insufficient to convict him of being a felon in possession and (4) the interests of justice warranted a new trial in his case. However, he has not raised either of those issues in his petition before this court. (*See* Pet., dkt. #2, at ¶ 2 (identifying only issue as ineffective assistance of trial counsel).)

OPINION

Smith argues that his felon-in-possession and battery convictions should be vacated because ineffective assistance by his trial counsel violated the Sixth Amendment. Specifically, he argues that defense counsel failed to make a number of necessary objections related to BMJ's direct testimony as the State's adverse witness and to the admission of the gun photograph into evidence. He also argues that his trial counsel failed to take steps to mitigate the prejudice resulting from the admission of this evidence.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must demonstrate constitutionally deficient performance by counsel that caused actual prejudice. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). To show that a counsel's performance was constitutionally deficient, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms . . . considering all the circumstances." *Strickland*, 466 U.S. at 687-88. To show actual prejudice, the petitioner must demonstrate, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Further, because the Wisconsin Court of Appeals addressed the merits of Smith's ineffective assistance of counsel claims, this court's review is subject to the particularly deferential standard of review under 28 U.S.C. § 2254(d). Specifically, Smith is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). A decision is contrary to clearly established federal law if its governing rule of law "differs from governing law set forth in Supreme Court cases," *Bailey v.*

*Lemke,* 735 F.3d 945, 949-50 (7th Cir. 2013) (citations omitted), while a decision involves an unreasonable application of Supreme Court precedent "if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Id*. Alternatively, Smith can obtain relief by showing that the state court's adjudication of his claims "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Again, however, a federal court owes particular deference to the state court, and especially to the underlying state court findings of fact and credibility determinations, which are all presumed correct unless the petitioner presents "clear and convincing" evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014); *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013).

Thus, to prevail on an ineffective assistance of counsel claim under § 2254(d), Smith must overcome what has been referred to as a "doubly deferential" form of review, which essentially asks "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 89 (2011). This court must deny relief so long as the state court of appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (citations omitted); *see also Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (This means that only a clear error in applying *Strickland* will support a writ of habeas corpus.). Applying this particularly deferential standard, the court will start by addressing Smith's arguments regarding BMJ's testimony, then turn to the admission of a gun photograph.

### A. BMJ's Testimony

Before the Wisconsin Court of Appeals, Smith argued, as he does again in his petition to this court, that his trial counsel mishandled BMJ's testimony in three ways. *See State of Wis. v. Smith*, Case No. 2018AP1835-CR (Ct. App. Nov. 27, 2019) (dkt. #9-11, at 6-8). However, like the court of appeals, this court does not find Smith's arguments persuasive.

*First*, Smith argues that his trial attorney should have objected to the State's request to consider BMJ an adverse witness justifying use of leading questions under Wis. Stat. § 906.11(3), because that statute only applies in civil cases. *See State v. Bergenthal*, 47 Wis. 2d 668, 688, 178 N.W.2d 16 (Wis. 1970). In contrast, Wis. Stat. § 972.09, which expressly applies in criminal cases, provides that a witness can only be declared hostile *after* offering testimony inconsistent with a prior statement.[6] Without addressing whether there was a material difference between the application of § 906.11(3) and § 972.09, the Wisconsin Court of Appeals determined that Smith had failed to show he suffered any actual prejudice as a result of Jasti's failure to object to the State's allegedly premature request to question BMJ adversely. Specifically, the court of appeals determined that it was "immediately apparent" from the trial record that BMJ's testimony "would be inconsistent with the statements she had previously made to the police," so even if Jasti had objected to the State's request as initially premature, "he would have only delayed the inevitable ruling that [BMJ] could reasonably be deemed 'hostile' to the prosecution," entitling it to use leading questions. (Dkt. #9-11, at ¶ 17 (citing *Strickland*, 466 U.S. at 694)). Although Smith criticizes the court of appeals for not

---

[6] At the time of trial, Wisconsin Stat. § 972.09 (2017-18) provided in relevant part that: "Where testimony of a witness . . . is inconsistent with a statement previously made by the witness, the witness may be regarded as a hostile witness and examined as an adverse witness, and the party producing the witness may impeach the witness by evidence of such prior contradictory statement."

10

even addressing § 906.11 and its limitations, any such discussion would *not* change the court of appeals' plainly correct prejudice analysis under *Strickland*.

*Second*, Smith asserts that the trial counsel should have objected to the State's use of inadmissible hearsay during BMJ's direct examination. (Dkt. #9-11, at 7.) Specifically, Smith takes issue with the fact that the prosecutor read certain of BMJ's out-of-court statements to law enforcement, then asked her to confirm she made those statements, without first eliciting any testimony from BMJ that contradicted the statements. However, the court of appeals correctly emphasized that courts "will not second-guess a reasonable trial strategy unless it was based on an irrational trial tactic or based upon caprice rather than upon judgment." (Dkt. #9-11, at ¶ 20 (citing *Strickland*, 466 U.S. at 689); *State v. Breitzman*, 2017 WI 100, ¶ 65, 378 Wis. 2d 431, 904 N.W.2d 93).) While Smith points out that Attorney Jasti admitted at the *Machner* hearing that he did not base his failure to object on any specific trial strategy, the court of appeals correctly noted that Jasti did not consider the State's leading questions problematic. Rather, he thought by forcing BMJ to say only what the prosecutor wanted to hear, the state's questioning was actually coming across poorly to the jury. Since Smith has failed to show that Jasti acted irrationally or without judgment, he fails to establish that his counsel's performance was constitutionally deficient.

As to prejudice, the court of appeals also reasonably concluded that Smith failed to show Jasti's objection would have prevented the jury from learning about BMJ's prior statements to the police, noting to the contrary that, "[i]f trial counsel had objected and the circuit court had sustained the objection, the State could have readily cured any problem by simply changing the order of its questioning." (Dkt. #9-11, at ¶ 21.) Thus, regardless of whether trial counsel had succeeded in objecting to and changed the order of BMJ's

testimony during the prosecutor's initial questioning, there was no reasonable likelihood that the jury's decision would be different because they would have heard the same testimony once the prosecutor rephrased his questions. Certainly, the Wisconsin Court of Appeals' finding that this order would not have actually prejudiced Smith is not one this federal court can overturn under a "doubly deferential" standard of review.

*Third*, and finally, Smith contends that his trial counsel was deficient for failing to ask BMJ during cross examination to tell her story in full about what actually happened during the alleged domestic abuse incidents, including how she sustained the scars on her arm pictured in a photograph shown to the jury.[7] However, the Wisconsin Court of Appeals found that even though trial counsel did not ask BMJ many questions about the incidents, he did ask questions when he had a basis to anticipate a favorable answer (such as BMJ's contentious relationship with Smith). In addition, Attorney Jasti testified at the *Machner* hearing that he could not anticipate what BMJ would say about many of the alleged incidents because BMJ had refused to meet with him before trial, and did not want to risk eliciting surprise testimony damaging to Smith. Moreover, BMJ's testimony on direct was generally favorable to Smith, BMJ had already denied that any of the alleged incidents occurred, and she testified to lying to the police initially because she was angry with Smith at that time.

---

[7] The court of appeals noted that BMJ made *unsworn* statements during presentence investigations and at the sentencing hearing that she received the scars from a woman stabbing her with a grilling fork and not a bullet. However, in rejecting Smith's request for a new trial in the interests of justice, the court of appeals reasonably determined that even assuming that BMJ would say the same under oath, which was entirely speculative, "this new testimony would merely add context to more relevant testimony she gave at trial—that Smith did not shoot her in the arm on October 28, 2014, as the State alleged." (Dkt. #9-11, at ¶¶ 44-45.) Smith did not specifically challenge this finding in his habeas petition, so the court will not consider it further.

While Smith argues that further explanation from BMJ could have ensured a full acquittal, that is mere speculation on Smith's part. Regardless, Smith has not shown that Jasti performed unreasonably under all the circumstances, nor that there was a reasonable probability he would have been acquitted had Jasti asked BMJ more questions on cross examination. Indeed, the fact that the jury acquitted Smith on eight out of 11 counts suggests the opposite.

Because this court finds the Wisconsin Court of Appeals' analysis as to all three of Smith's challenges to be based on essentially unassailable findings of fact and a reasonable application of *Strickland*, as well as Wisconsin state court cases applying *Strickland*, Smith has identified *no* basis on which this court could conclude that the state court's rejection of Smith's ineffective assistance claim regarding BMJ's testimony fell "well outside" the boundaries of permissible differences of opinion. *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (federal court cannot grant habeas relief unless state court decision was "'unreasonable,' which means something like lying well outside the boundaries of permissible differences of opinion").

**B. Gun Photograph**

Smith makes two primary arguments related to the admission of a gun photograph into evidence, just as he did before the Wisconsin Court of Appeals. *First*, Smith argues that his trial counsel should have opposed admission of the photo as irrelevant and unduly prejudicial, because the gun depicted in it could not be tied to Smith. *Second*, Smith argues that after the circuit court admitted the gun photograph for demonstrative purposes only,[8] Jasti should have

---

[8] As the court of appeals noted, "[t]he term 'demonstrative evidence' generally refers to evidence 'used simply to lend clarity and interest to oral testimony' . . . 'in lieu of [substantive] evidence'." (Dkt. #9-11, at ¶ 26 n.6 (quoting *Anderson v. State*, 66 Wis. 2d 233, 248, 223 N.W.2d 879 (1974)).)

13

taken further steps to prevent the jury from inferring the photo depicted the *actual* gun that Smith was charged with possessing, including by objecting to BMJ's and Peterson's testimony about the photo, objecting to the submission of the photo to the jury during deliberations, and requesting that the jury be instructed to consider the photo only as demonstrative. However, the court of appeals reasonably rejected both arguments on the ground that each is based on an erroneous interpretation of the pretrial hearing transcript.

While the court of appeals was puzzled by the State's reference to the photo as "demonstrative," especially given the reported source of the photo, its appearance, and the nature of the felon-in-possession charge against Smith, it held that the circuit court did not acknowledge or address this characterization and instead ruled on the foundation objection, holding that the gun photo would come in if the State could establish a foundation. Specifically, the court of appeals ruled an "independent review of the record reveals that the circuit court did not understand the prosecutor to be stipulating that the gun photo would be merely 'demonstrative' evidence, and we conclude that no reasonable attorney in trial counsel's position would have believed that the court limited the photo to demonstrative use." (Dkt. 9-11, at ¶ 29.)

Contrary to Smith's contentions, the court of appeals' reading of the pretrial transcript is reasonable and within the boundaries of permissible differences of opinion, meaning it is unassailable on review by this court. In particular, while Smith points out that during questioning by postconviction counsel at the *Machner* hearing, Jasti confirmed his understanding that the photo had been admitted for demonstrative use (*see* dkt. #9-9, at 16), a review of the transcript of that hearing supports the court of appeals' determination that both Jasti and the circuit court accepted postconviction counsel's representation about the nature of

14

the circuit court's three-year-old, pretrial ruling at face value, without examining the relevant portions of the transcript. As a result, Smith has failed to present clear and convincing evidence that the circuit court limited the photo to demonstrative use or understood the State to be stipulating to using the photo only as demonstrative evidence.

In fact, given both the parties' *and* the circuit court's conduct with respect to the photograph, beginning with the circuit court's apparent agreement to "admit" it as a fair depiction of what the gun looked like through its being sent back to the jury during deliberations, the court of appeals' finding is both reasonable and essentially non-reviewable in federal court. Moreover, absent some evidence that it was admitted or used at trial as more than a picture of a gun "like that used by Smith," there is not showing of jury confusion, and hence no proof of prejudice. Regardless, there being no clear error in the court of appeals' findings or application of *Strickland* as to this issue, this court will not overturn Smith's conviction on this basis either.

## C. Certificate of Appealability

The only remaining question on habeas review is whether to grant Smith a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented

were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Here, Smith has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the United States Supreme Court. Because no reasonable jurist would debate this issue under clearly established federal law or its application to a reasonable interpretation of the facts, the court will not issue petitioner a certificate of appealability.

## ORDER

IT IS ORDERED that petitioner Deandre Smith's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED, and Smith is DENIED a certificate of appealability.

Entered this 6th day of November, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge